SUMMONS ISSUED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MARK GREENBERG,

                         Plaintiff,

              -against-

THE CITY OF NEW YORK, DETECTIVE JOHN
KENNY (N.Y.P.D.) SHIELD #6292, SERGEANT
RADAMES TIRADO (N.Y.P.D.) SHIELD #1772,
SERGEANT RICHARD COHEN (N.Y.P.D.) SHIELD
#1933, SERGEANT CUSTODIO (N.Y.P.D.) SHIELD
#3615, LIEUTENANT AND OFFICERS JOHN DOE
#1-10 (THE NAME JOHN DOE BEING FICTICIOUS,
AS THE TRUE NAME(S) IS/ARE PRESENTLY
UNKNOWN), AND KANG LIN,

                      Defendants.

-------------------------------------------------------------------X

Index No.:

**CV 14**                              **5307**

**VERIFIED**
**COMPLAINT**

**JURY TRIAL**
**DEMANDED**

WEINSTEIN, J.

LEVY, M.J.

The Plaintiff, complaining by his attorney(s), THE LAW OFFICE OF ANDREW L.

HOFFMAN, P.C., respectfully shows to this Court and alleges:

## INTRODUCTION

1. This is an action to vindicate the rights of Mark Greenberg, a retired New York City

    police officer, widower, and father who was wrongfully arrested and incarcerated after an

    erratic and patently unbelievable neighbor falsely accused him of assault, following a

    dispute involving a parking space.

2. The neighbor, who upon information and belief, is hearing impaired, not proficient in

    English, and unable to speak, charged Greenberg's vehicle as he attempted to park on a

    public street, waving his arms, taking his picture, and behaving so irrationally that

    Greenberg felt compelled to call 911.

1

3. When police from the 60th Precinct arrived, the neighbor began communicating bizarre and contradictory stories (via pen and paper) ranging from accusations that Greenberg had run him over with his car, to Greenberg had robbed him of a parking space he was attempting to reserve for a friend.

4. The responding officers quickly realized the complaints of the neighbor were totally incredible and sent him away.  Nevertheless, some weeks later, the neighbor filed a complaint against Greenberg via the 60th Precinct, alleging, in sum and substance, that Greenberg had attempted to strangle him, then fled the scene in his car; unfortunately, the officers handling the complaint, who were not the same officers who originally investigated the dispute, believed him.

5. Notably, the neighbor could not identify the date he was allegedly assaulted; nor could he produce witnesses, nor did he have wounds consistent with any alleged assault.

6. Nevertheless, Greenberg was taken from his home, arrested and placed in a general population holding cell with detainees who may well have recognized him as a police officer, and assaulted him or worse.

7. The individual Defendants in this case are now being sued for their respective roles in the violation of retired Officer Greenberg's rights.

8. The City of New York is being sued for failing to properly train, supervise, and/or discipline New York City police officers, and for continuing to tolerate and defend a widely publicized departmental culture of willful indifference toward the rights of citizens—including in this case, the rights of a retired New York City police officer.

## THE PARTIES

9.     At all times relevant to this litigation, Plaintiff MARK GREENBERG owned a residence in Brooklyn, NY.

10.     Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant all Defendant officers were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

11.     Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, its agents, servants, and employees, operated, maintained and controlled the New York City Police Department, including all the police officers thereof.

12.     Upon information and belief, at all times hereinafter mentioned, Defendants Detective JOHN KENNY, Sergeant RADAMES TIRADO, Sergeant RICHARD COHEN, Sergeant CUSTODIO and LIEUTENANT and POLICE OFFICER(S) DOE #1-10 were employed by the Defendant CITY OF NEW YORK, as members of its police department.

13.     Upon information and belief, at all times hereinafter mentioned, all Defendant Police Officers, be they known or unknown, worked out of the 60th precinct in Brooklyn, New York.

14.     Upon information and belief, at all times hereinafter mentioned, Defendant KANG LIN resided in Brooklyn, New York.

15.     The New York City Police Department is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the police chief of the New York City Police Department is responsible for the policies, practices, and customs of the New York City Police Department as well as the hiring, screening, training,

3

supervising, controlling and disciplining of its police officers and civilian employees, and is the final decision maker for that agency.

16.    This action arises under the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, the rights guaranteed by the Constitution, and the laws of the State of New York.

17.    Individual Defendants in this action are being sued in both their individual and official capacities.

## STATEMENT OF FACTS

### -The Parking Incident-

18.    On May 12, 2013, at about 8:30PM, Plaintiff Mark Greenberg was returning home when he sought to park his car on West 5th Street between West Brighton Beach Avenue and Sea Breeze Avenue, in Brooklyn, NY.

19.    As Mr. Greenberg approached his desired spot, he noticed a man on foot (later identified as a neighbor, Kang Lin) waving his arms wildly, perhaps trying to reserve the spot for another car, though no car was readily in sight.

20.    Mr. Greenberg tried to ignore Mr. Lin and parked in the space anyway.

21.    After Mr. Greenberg's car came to a stop, Lin charged the driver's side of his vehicle, gesturing in a very strange and aggressive manner, and taking pictures of Mr. Greenberg with a hand held device.

4

22.     Mr. Greenberg remained in his car and telephoned 911 for assistance; Mr. Greenberg also took several photos of Kang Lin with his phone to assist officers in their investigation once they arrived.

23.     When 60th Precinct officers came on the scene several minutes later, they interviewed Mr. Greenberg and Kang Lin, determined there had been no wrong doing, and departed.

## -The Plaintiff's Arrest-

24.     Several weeks later, Defendant Kang Lin filed a new complaint against Greenberg with the 60th Precinct, alleging, in sum and substance, that Greenberg had attempted to strangle him, then fled the scene in his car; unfortunately, the officers handling the complaint, who were not the same officers who investigated the original complaint, chose to believe him.

25.     Notably, Kang Lin could not identify the date he was allegedly assaulted; nor could he produce witnesses, nor did he have wounds consistent with any alleged assault.

26.     Nevertheless, as indicated in existing police paperwork, Defendant Detective John Kenny, with the support, approval, and/or directives of Defendant Sergeants Radames, Tirado, Cohen, and Custodio, had Greenberg arrested at his home, brought to the 60th Precinct for questioning, and ultimately prosecuted.

27.     Once at the 60th Precinct, retired Officer Greenberg explained to Detective Kenny that the allegations were the unfounded imaginings of an apparently unstable neighbor, as previously investigated by officers from the 60th precinct, including an "Officer Allen."

28.     Kenny acknowledged, in sum and substance, that Greenberg shouldn't have been arrested under the circumstances, but stated that an unnamed Lieutenant ("Lieutenant Doe") had voiced concern that "everything is micromanaged now," and ordered the arrest to go forward because

5

Mark Greenberg was a retired police officer, and declining to prosecute might be perceived as "preferential treatment."

29.     When Greenberg urged Defendant Kenny to contact Officer Allen regarding his story, Kenny refused, stating in sum and substance that Allen wasn't on duty at that time, and the unnamed lieutenant instructed him not to call.

30.     Kenny further stated that the lieutenant had instructed him to put Mark Greenberg through the system, as opposed to issuing a desk appearance ticket ("DAT") and sending him home—once again, Kenny said, there was concern that anything less might convey "preferential treatment."

31.     Thus, to avoid the appearance of "preferential treatment" toward a retired member of the New York City Police Department, the constitutional rights of Mark Greenberg were violated, as he was arrested and prosecuted absent probable cause.

32.     Worse yet, for approximately eight hours of his detainment, Greenberg was placed in a general population holding cell with detainees who may well have recognized him as a police officer, and assaulted him or worse.


                              **-The Aftermath-**

33.     Greenberg finally saw a judge and was released on his own recognizance at approximately 10:00PM, about 15 hours after officers had originally arrested him at his home.

34.     Greenberg was forced to hire a lawyer at his own expense to fight the frivolous charges.

35.     An Order of Protection was issued against Greenberg, making him terrified to be in the vicinity of his own apartment, for fear Kang Lin would encourage or seek his arrest, and officers from the 60th precinct would all too readily oblige.

                                       6

36.     On September 11, 2013, the Plaintiff's criminal case was "dismissed forthwith" pursuant to New York Criminal Procedure Law 170.55.

37.     In substance and effect, the determination of Mr. Greenberg's case was equivalent to an immediate outright dismissal.

38.     Mr. Greenberg has suffered mightily as a result of his wrongful arrest.

39.     Among other things, Mr. Greenberg suffered a tremendous sense of betrayal regarding members of the New York City Police Department, with whom he had entrusted his life as an officer, and had always considered members of his family.

40.     At the time of his wrongful arrest, Mr. Greenberg, a widower, had just begun dating again—but the fledgling relationship ended amid charges, however outrageous, that Greenberg had attempted to strangle his neighbor.

41.     To this day, Mark Greenberg remains extremely anxious whenever he approaches the vicinity of his building or hears his doorbell ring, fearing that something similar to the circumstances underlying his wrongful arrest may happen again.

### AS AND FOR THE FIRST CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST
### THE CITY OF NEW YORK AND ALL NAMED NYPD DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**
**-False Arrest/Imprisonment-**

42.     Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 41.

43.     The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials, and prohibit law enforcement officers from arresting and detaining individuals in the absence of appropriate authorization.  It

7

also precludes police officers from conducting arrests in the absence of probable cause to believe that a crime has been committed.

44.    The actions of the Defendants as stated herein violated Mark Greenberg's rights under Federal law.

45.    It is clear the Defendants lacked any objectively reasonable basis to support a legitimate probable cause arrest.

46.    Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of retired Officer Mark Greenberg.

47.    This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

48.    As a direct and proximate result of the unconscionable acts described above, Plaintiff Mark Greenberg has been substantially injured.

## AS AND FOR THE SECOND CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST THE CITY OF NEW YORK AND ALL NAMED NYPD DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law
### -Malicious Abuse of Process-

49.    Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 48.

50.    Defendants issued legal process against the Plaintiff.

51.    Defendants issued legal process against the Plaintiff to obtain a collateral objective outside the legitimate ends of the legal process; namely, to demonstrate, for public relations purposes, that retired members of the New York City Police Department would not be given "preferential treatment" when accused of a crime.

8

52.     Defendants acted with intent to do harm to the Plaintiff, violating the rights of a former police officer, solely to avoid potentially harmful publicity, without excuse or justification.

53.     This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

54.     As a direct and proximate result of the unconstitutional acts described above, Plaintiff Mark Greenberg has been substantially injured.


## AS AND FOR THE THIRD CAUSE OF ACTION
## ON BEHALF OF THE PALINTIFF AGAINST THE CITY OF NEW YORK AND ALL NAMED NYPD DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law
### -Conspiracy to Violate Plaintiffs' Civil Rights-

55.     Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 54.

56.     Defendant officers, acting under color of state law in both their individual capacities and as agents for the City of New York, conspired together, reached a mutual understanding, and acted in concert to undertake a course of conduct violative of Plaintiff's civil rights by agreeing to intentionally ignore evidence or inquire further, and by intentionally arresting and prosecuting the Plaintiff absent probable cause.

57.     This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

58.     Defendants' actions were motivated by bad faith, malice, and/or willful indifference.

59.     As a direct and proximate result of the unconstitutional acts described above, Plaintiff Mark Greenberg has been substantially injured.

## AS AND FOR THE FOURTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST THE CITY OF NEW YORK AND ALL
## NAMED NYPD DEFENDANTS

### Violation of Constitutional Rights Under Color of State Law
### -Failure to Intercede-

60.     Plaintiff incorporates by reference and realleges each and every allegation stated in

Paragraphs 1 through 59.

61.     The Fourth Amendment of the United States Constitution protects citizens from

unreasonable searches and seizures by government officials without the appropriate

authorization.

62.     The actions of Defendant officers detailed above violated the Plaintiff's rights under the

United States Constitution.  It is widely recognized that all law enforcement officials have an

affirmative duty to intervene to protect the constitutional rights of citizens from infringement by

other law enforcement officers in their presence.

63.     Defendants' actions were motivated by bad faith and malice, and/or deliberate

indifference to the rights of the Plaintiff.

64.     This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983,

given that said actions were undertaken under color of state law.

65.     As a direct and proximate result of the unconstitutional acts described above, the Plaintiff

has been substantially injured.


## AS AND FOR THE FIFTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF
## AGAINST THE CITY OF NEW YORK

### - Implementation of Municipal Policies, Practices, and Customs that Directly Violate
### Constitutional Rights, Failure to Implement Municipal Policies to Avoid Constitutional
### Deprivations and Failure to Train and Supervise Employees Under Color of State Law-

10

66.     Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 65.

67.     Upon information and belief, Defendant Sergeants Radames, Tirado, Cohen, Custodio, and Lieutenant "Doe," supervised, directed, and otherwise sanctioned the wrongful conduct of other Defendant Kenny and John Doe officers.

68.     Upon information and belief, Defendant City of New York and Sergeants Radames, Tirado, Cohen, Custodio, and Lieutenant "Doe," were supervisors and final decision makers, and as a matter of policy, practice, and custom, have acted with a callous, reckless and deliberate indifference to the Plaintiff's constitutional rights and laws of the United States, in that they failed to adequately discipline, train, supervise or otherwise direct police officers concerning the rights of citizens, including not making false arrests, ignoring material evidence, and prosecuting innocent individuals.

69.     In the alternative, and upon information and belief, Defendants instituted policies addressing the topics listed above, but through deliberate indifference to the same culture of gross negligence, carelessness, and malice, and/or improperly pressuring officers to meet certain arrest quotas regardless of whether probable cause was present, demonstrated a willful indifference to the constitutional rights of the Plaintiff.  The policies, procedures, customs and practices of the Defendants violated the Constitutional rights of the Plaintiff under the Fourth Amendment of the United States Constitution.

70.     It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the clearly established constitutional rights of citizens from infringement by other law enforcement officers in their presence.

71.    At all times relevant herein, the right to be free from deprivations of liberty interests caused by unjustifiable criminal charges and procedures were clearly established constitutional rights that a reasonable person would have known.

72.    Upon information and belief, over a span of years, the 60th Precinct has repeatedly been mentioned as a site for police misconduct, including the wrongful prosecution of Lawrence Williams[1] who was wrongfully incarcerated for some 2.5 years as a result of systemic misconduct at the 60th Precinct.

73.    Upon information and belief, several of the named Defendants in the present case have been sued, in some cases repeatedly, pursuant to allegations of official misconduct, though none have ever been subject to appropriate disciplinary action.

74.    In or about July of 2013, the Kings County District Attorney's Office announced the formation of an unprecedented panel[2] of former prosecutors, professors, and retired judges to review as many as 50 convictions involving a former Kings County detective, Louis Scarella, who is alleged to have regularly sought false statements from witnesses, and whose work appears to have sent an array of innocent citizens to prison.

75.    Long time Kings County District Attorney Charles Hynes was recently voted out of office amidst widespread[3] allegations of misconduct.

---

[1] See Staten Island Man Sues City After False Arrest, Staten Island Advance, August 10, 2013, available at http://www.silive.com/news/index.ssf/2013/08/staten_island_man_sues_city_af.html
[2] Panel Named to Review Trial Convictions Involving Retired Brooklyn Detective, July 2, 2013, Brooklyn Daily Eagle, available at http://www.brooklyneagle.com/articles/panel-named-review-trial-convictions-involving-retired-brooklyn-detective-2013-07-02-180000
[3] See e.g., Charles Hynes, Scandal-Plagued District Attorney, Faces Verdict at the Polls, ProPublica, September 6, 2013, available at http://www.huffingtonpost.com/2013/09/06/charles-hynes-brooklyn-district-attorney-election_n_3881395.html; Brooklyn DA Charles Hynes in the Hot Seat for Protecting Prosecutor Who Imprisoned Innocent Man, New York Daily News, November 16, 2012, available at http://www.nydailynews.com/new-york/b-klyn-da-charles-hynes-hot-seat-wrongful-conviction-article-1.1203342; Ex-Brooklyn Prosecutor Charles J. Hynes Accused of Misuses of Funds, New York Times, available at http://www.nytimes.com/2014/06/03/nyregion/charles-hynes-brooklyn-district-attorney-inquiry.html.

76.     Upon information and belief, former Kings County Detective, Michael Race, whose work has also been linked to the conviction of innocents, has been quoted in press[4] accounts as stating that of the 750 murder investigations he ran, only one was "done the correct way, A to Z."

77.     In 2011, some two-dozen Bronx-based NYPD officers were subject to criminal charges[5] involving allegations of "fixing" tickets for friends and relatives.

78.     Upon information and belief, in July of 2012, after discovering that many people arrested on charges of criminal trespass at Bronx County housing projects were innocent, even though police officers had provided written statements to the contrary, the Bronx district attorney's office quietly adopted a policy[6] of no longer prosecuting people who were stopped at public housing projects and arrested for trespassing, unless the arresting officer was interviewed to ensure that the arrest was warranted.

79.     On February 2, 2012, officers from the 47th Precinct in the Bronx wrongfully entered the home of 18 year old Ramarley Graham and shot the unarmed youth to death in his bathroom as he was allegedly trying to flush a small quantity of marijuana down the toilet.

80.     On June 27, 2011, former Bronx-based N.Y.P.D police officer and later Sergeant William Eiseman pled guilty to one count of felony first-degree perjury and three counts of official misconduct stemming from allegations that he personally filed false instruments, intentionally testified falsely, and encouraged his subordinates to act in kind.

---

[4] See e.g., In a 1992 Murder, Evidence of Flawed Justice, July 4, 2013, New York Times, available at http://www.nytimes.com/2013/07/05/nyregion/in-a-1992-murder-evidence-of-flawed-justice.html
[5] See Big Inquiry Into Ticket-Fixing in New York, New York Times, April 17, 2011, available at http://www.nytimes.com/2011/04/18/nyregion/ticket-fixing-by-police-investigated-in-new-york.html?_r=0&adxnnl=1&adxnnlx=1400166713-OIwMCI6A6jnLyJC00DdeoQ
[6] Prosecutor Deals Blow to Stop and Frisk Tactic, New York Times, September 25, 2012, available at http://www.nytimes.com/2012/09/26/nyregion/in-the-bronx-resistance-to-prosecuting-stop-and-frisk-arrests.html?pagewanted=all

81.     In August of 2013, federal Judge Shira A. Sheindlin of the Southern District of New

York found[7] that the New York City Police Department resorted to a "policy of indirect racial

profiling" as officers routinely stopped "blacks and Hispanics who would not have been stopped

if they were white." The Plaintiff in this case is African American, and has alleged being the

target of racial epithets while being assaulted by Defendant Eiseman, who is Caucasian.

82.     Mayor Bill De Blasio ran his winning campaign[8] in substantial part on the need for

"much needed reforms," with the NYPD, calling for "new leadership," the appointment of an

"inspector general," to oversee the NYPD, and the introduction of a "strong racial profiling bill."

83.     The nature, regularity, and scale of such revelations, and the extraordinary efforts being

undertaken in response to a highly publicized slew of wrongful convictions, gives rise to an

inference of systemic incompetence and corruption on the part of the New York City Police

Department, as such a widespread legacy of injustices cannot plausibly be laid at the feet of a

few rogue officers.

84.     Defendant(s) also, upon information and belief, demonstrated deliberate indifference to

the rights of those arrested in the City of New York by failing to adequately hire, screen, train,

and supervise officers in Kings County and the 60th Precinct.

85.     The policies, procedures, customs and practices of the above-referenced Defendants

violated the Constitutional rights of the Plaintiff under the Fourth, and Fourteenth Amendments

of the United States Constitution.

86.     This conduct on the part of Defendants also represents a violation of 42 U.S.C § 1983,

given that said actions were undertaken under color of state law.

---

[7] Judge Rejects New York's Stop and Frisk Policy, August 12, 2013, New York Times, available at
http://www.nytimes.com/2013/08/13/nyregion/stop-and-frisk-practice-violated-rights-judge-
rules.html?pagewanted=all
[8] See Bill DeBlasio campaign website @ http://www.billdeblasio.com/issues/crime-fighting-public-safety

87.    Upon information and belief, none of the Defendants named herein were disciplined in for their actions relative to the Plaintiff.

88.    As a direct and proximate result of the unconstitutional acts described above, Plaintiff Mark Greenberg has been substantially injured.


## STATE CLAIMS

89.    Notice of the Plaintiff's claim, the nature of the claim and the date of, the time when, the place where and the manner in which the claim arose was duly served upon the Comptroller of the City of New York on or about September 10, 2013.

90.    Mr. Greenberg sat for a 50h hearing pursuant to his claim on March 5, 2014.

91.    More than 30 days have elapsed since the Notice of Claim was served upon the Defendant City of New York and said defendant has neglected to initiate any settlements thereof.

92.    This action is commenced within One Year and Ninety-Days after the cause of action arose.

93.    At all times relevant to the state claims cited herein, Defendant officers were acting in the scope of their employment, as agents of the City of New York.


## AS AND FOR THE SIXTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST ALL DEFENDANTS

### -Negligent Infliction of Emotional Distress-

94.    Plaintiff incorporates by reference and reallege each and every allegation stated in Paragraphs 1 through 93.

95.    As a direct and proximate result of the Defendants' outrageous departure from accepted

standards of care, Plaintiff was caused to suffer severe emotional distress.


## AS AND FOR THE SEVENTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF
## AGAINST ALL NAMED NYPD DEFENDANTS

### -Intentional Infliction of Emotional Distress-

96.    Plaintiff incorporates by reference and realleges each and every allegation stated in

Paragraphs 1 through 95.

97.    At all times mentioned herein, Defendants' conduct was intentional, extreme and

outrageous.

98.    As a direct and proximate result of the unconstitutional acts described, the Plaintiff has

suffered severe emotional distress.


## AS AND FOR THE EIGHTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF
## AGAINST ALL NAMED NYPD DEFENDANTS

### -Negligent Hiring, Retention, and Supervision-

99.    Plaintiff incorporates by reference and realleges each and every allegation stated in

Paragraphs 1 through 98.

100.    At all times relevant, Defendants Kenny, Tirado, Cohen, Custodio, Lieutenant Doe, and

Officer(s) Doe were negligent, careless, and reckless in hiring, retaining, supervising, and

promoting as and for their employees, in that said officers, as employees of the City of New

York, were not qualified to be hired or retained or promoted as police officers, lacked the

experience, deportment, skill, training, and ability to be employed by the Defendant City of New

16

York; to be retained as employees of the City of New York; and to be utilized in the manner that each was employed on the day in question.

101.    At all times relevant, Defendants Kenny, Tirado, Cohen, Custodio, Lieutenant Doe, and Officer(s) Doe failed to exercise due care and caution in hiring, retaining, and/or promoting practices; Defendants failed to adequately investigate police officers' backgrounds; adequately screen and test the Defendant police officers; failed to adequately monitor or supervise the Defendant police officers; failed to properly discipline officers who violate Patrol Guidelines; failed to properly train and retrain the Defendant police officers; and the Defendant City of New York, its' agents, servants, and/or employees, were otherwise careless, negligent, and reckless.

102.    The aforesaid occurrence, to wit: wrongfully arresting the Plaintiff absent probable cause; failing to intervene when the Plaintiff's rights were plainly being violated, engaging in conspiracy to carry out unconstitutional actions resulting in injuries to the Plaintiff, were caused wholly and solely by reason of the negligence or deliberate indifference of the named NYPD Defendants without any negligence on the part of the Plaintiff contributing thereto.

103.    That by reason of the aforesaid, Plaintiff has been substantially damaged.


## DEMAND FOR PUNITIVE DAMAGES

104.    The actions of Defendants described herein were extreme and outrageous, and shock the conscious of a reasonable person.  Consequently, an award of punitive damages is appropriate to punish the Defendants for their cruel and uncivilized conduct.  The Plaintiffs do not seek punitive damages against the City of New York.

## DEMAND FOR TRIAL BY JURY

105.   The Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Mark Greenberg requests that this Honorable Court grant

him the following relief:

A.   A judgment in favor of Plaintiff against all Defendants for compensatory damages in an amount to be determined by a properly charged jury.

B.   A judgment in favor of Plaintiff against all Defendants but the City of New York for punitive damages in an amount to be determined by a properly charged jury;

C.   A monetary award for attorneys fees and costs of this action, pursuant to 42 U.S.C. § 1988;

D.   Any other relief this Court finds to be just, proper, and equitable.

Dated:  New York, New York
       September  11  , 2014

Respectfully Submitted By:


Andrew L. Hoffman, Esq. (AH9502)
Law Office of Andrew L. Hoffman, P.C.
*Attorneys for the Plaintiff*
261 Madison Avenue, 12 Floor
New York, NY 10016
T: (212) 736-3935
E: ahoffman@andrewhoffmanlaw.com

18

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK )
                         SS.:
COUNTY OF NEW YORK)

       I, the undersigned, am an attorney admitted to practice in the Eastern District of New York, and I hereby affirm and say that:

       I am the attorney of record for the Plaintiff Mark Greenberg, with an office located at 261 Madison Avenue, 12th FL, New York, New York 10016.

       I have read the foregoing Complaint and know the contents thereof; that and the same is true to my knowledge, except as to the matters therein stated to be alleged on information and belief, and, as to those matters I believe them to be true.

       My belief as to those matters therein not stated upon knowledge is based on investigation, correspondence, conferences and all facts, data, information, reports, statements, etc. in our file pertaining to this matter.

       The reason I make this Affirmation instead of the Plaintiff is that the Plaintiff is not within the county where Affiant maintains his office.

       I affirm that the foregoing statements are true under penalties of perjury.

Dated:       New York, New York
             September , 2014

                                     Andrew L. Hoffman, Esq.